IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STELLA CARTER,

        Plaintiff,                        No. CIV S-05-2358 KJM

    vs.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.                    ORDER

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security, replacing Jo Anne B. Barnhart, the original defendant herein. Pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

1

I. Factual and Procedural Background

In a decision dated May 25, 2005, the ALJ determined plaintiff was not disabled.[2] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of back, neck, knee, elbow and wrist strain but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff has the residual functional capacity to perform medium work but cannot perform repetitive fine manipulation; plaintiff cannot perform her past relevant work; using the grids as a framework for decision-making, there are a significant number of jobs in the national economy that plaintiff could perform; and plaintiff is

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

not disabled.  Administrative Transcript ("AT") 18-19.  Plaintiff contends the ALJ committed error at step two of the sequential analysis; improperly rejected the opinion of a treating physician; improperly discredited plaintiff's testimony; and should not have used the grids in finding plaintiff was not disabled.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

III.  <u>Analysis</u>

    A.  Step Two Analysis

       Plaintiff contends the ALJ ignored medical evidence regarding degenerative disc disease and migraine headaches and in doing so, improperly assessed the severity of plaintiff's impairments.  An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  <u>Smolen v. Chater</u> 80 F.3d 1273, 1290 (9th Cir. 1996);  <u>see</u> <u>also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001).  Impairments must be considered in combination in assessing severity.  20 C.F.R. § 404.1523.

       The ALJ found at step two of the sequential analysis that plaintiff has severe impairments of back, neck, knee and wrist strain.  AT 14.  Plaintiff contends the ALJ improperly excluded consideration of a diagnosis of degenerative disc disease and migraine headaches made by Dr. Malabed.  AT 156.  Plaintiff was seen by Dr. Malabed only three times from January 2003 to March 2004.  No work restrictions were assessed by Dr. Malabed in connection with any of the diagnoses he made.  The migraine headaches diagnosed by Dr. Malabed were common migraine without mention of intractable migraine.  In light of the findings by the other treating and evaluating physicians that plaintiff had no objective factors of impairment, there is no error in the ALJ's assessment at step two.  AT 102, 132, 134, 162.

/////

/////

/////

/////

4

B.  Medical Opinions

Plaintiff further contends the ALJ improperly rejected the opinions of her treating physicians, Drs. Malabed[3] and Wiggins.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Wiggins saw plaintiff twice, once in September 2004 and again in November of that same year.  In February 2005, in a medical assessment form, Dr. Wiggins opined, based

---

[3] As discussed above, Dr. Malabed offered no opinions regarding work restrictions.  The ALJ did not err in failing to specifically address Dr. Malabed's records in his decision.

5

on plaintiff's history, that plaintiff could walk/stand for less than one hour, sit for thirty minutes, lift no more than twenty pounds on an occasional basis and could work three to four days per week of four hour days. AT 162-164. The only medical findings Dr. Wiggins cited in support of his assessment was plaintiff's lumbar pain secondary to a vehicular accident. AT 162. The ALJ accorded minimal weight to Dr. Wiggins' limitations because they were based only on plaintiff's history and subjective complaints and not supported by objective evidence. The ALJ also noted that treating physicians Drs. Pugh and Hope as well as the consultative orthopedist, Dr. Miller, found virtually no objective signs of limitation. AT 15, 102, 122, 132, 134. On this record, there was no error in the ALJ's weighing of the conflicting medical evidence.

    C. Credibility

        Plaintiff also contends the ALJ improperly assessed her credibility. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

        In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified that due to pain she has difficulty lifting a skillet, that she could sit at most for fifteen to twenty minutes, that she could walk for an hour but would feel worse after walking than before, and that she had to lay down for an hour in the middle of the afternoon four or five times a week. AT 179, 181, 183, 185. In rejecting these extreme limitations, the ALJ found them inconsistent with the objective findings in the medical record. AT 16-17. The ALJ also noted that there were no new findings of trauma since plaintiff's motor vehicle accident and that since retiring from her job in 2002, plaintiff had not engaged in routine computer work that might exacerbate her shoulder, back and arm pain. The ALJ also considered the findings of the specialists who did not consider plaintiff's carpal tunnel problems to be as extreme as testified to by plaintiff. AT 16-17, 118, 132, 179-180. The ALJ also factored into the analysis the reasons for plaintiff's retirement. AT 17, 185.[4] Finally, the ALJ took into account the fact

---

[4] The ALJ concluded that plaintiff's testimony indicated she retired because accommodations would not be made for her, not that she could not work if those accommodations were to be made. Plaintiff was placed on a state disability retirement; the

7

plaintiff was capable of doing many aspects of household chores, although acknowledging she received help with many of those chores. AT 17, 172-173. The factors considered by the ALJ were all valid and supported by the record. The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

D.  Grids

Finally, plaintiff contends she suffers from severe nonexertional impairments that preclude application of the grids. The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

---

reasons therefor are not set forth in the administrative record. AT 48, 185-186.

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a(c); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n.7 (citing 20 C.F.R. pt. 404,

1  Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-
2  64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant
3  limitation on exertional capabilities in order to depart from the grids).

        Relying on the assessments of the treating, examining and state agency physicians, the ALJ properly found plaintiff could perform medium work and that the only nonexertional limitation was a restriction from performing repetitive fine manipulation.  AT 18.  The ALJ then relied on Social Security Ruling 83-14, which notes that most medium jobs require only gross use of the hands and concluded the size of the occupational base was not significantly compromised.  AT 18.  Under these circumstances, there was no error in relying on the grids to find plaintiff was not disabled.

        The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

        1.  Plaintiff's motion for summary judgment or remand is denied, and

        2.  The Commissioner's cross-motion for summary judgment is granted.

DATED:  March 28, 2007.

_____
U.S. MAGISTRATE JUDGE

006
carter.ss

---

subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

9